UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 93-CR-30017-MAP |
| | ) | |
| VINCENT LATTANZIO, | ) | |
| Defendant. | ) | |


## MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255
### (Dkt. No. 355)

February 8, 2017

PONSOR, U.S.D.J.

### I. INTRODUCTION

Defendant Vincent Lattanzio has brought this petition pursuant to 28 U.S.C. § 2255, seeking to vacate his sentence based on his incorrect designation as an armed career criminal. The government opposes. For the reasons that follow, the court will allow Defendant's motion.

### II. BACKGROUND

On April 21, 1995, the late Judge Frank H. Freedman sentenced Defendant to an aggregate term of 353 months for robbing an armored car, being a felon in possession of a firearm, and using a firearm during the commission of a

crime of violence.  The length of the sentence was enhanced
substantially by the court's finding that Defendant
qualified as an armed career criminal under 18 U.S.C. §
924(e).  The Armed Career Criminal Act ("ACCA") dictates
that, to receive an enhanced sentence, a defendant must have
been convicted on at least three separate, prior occasions
of a predicate "violent felony or a serious drug offense."
§ 924(e)(1).

The ACCA, as passed by Congress, defined a "violent
felony" in two ways: first as a crime that "has as an
element the use, attempted use, or threatened use of
physical force against the person of another"; or,
alternatively, as one of several specified crimes or an
equivalent crime that "presents a serious potential risk of
physical injury to another."  § 924(e)(2)(B)(i) & (ii).
These two ways of qualifying for an enhanced sentence under
the ACCA are sometimes referred to as the "force" clause and
the "residual" clause.

In 2015, the Supreme Court held that the "residual"
clause (excluding the specified crimes) was
unconstitutionally vague.  <u>Johnson v. United States</u>, 135 S.

Ct. 2551 (2015) ("Johnson II").  Today, that portion of the
statute is no longer available to anchor a sentence
enhancement under the ACCA, and defendants previously
sentenced under that section of the statute can move to
amend their sentences.  Welch v. United States, 136 S. Ct.
1257, 1265 (2016).

Five years earlier, the Supreme Court construed the
"force" clause of the ACCA as requiring "violent force --
that is, force capable of causing physical pain or injury to
another person."  Johnson v. United States, 559 U.S. 133,
140 (2010) (emphasis in original) ("Johnson I").  Unless a
defendant has been convicted of one of the crimes
specifically enumerated under § 924(e)(B)(ii), this narrowed
"force" clause offers the only basis today for an ACCA
enhancement based upon prior convictions for a violent
felony.

Defendant in this case was found at the time of his
sentencing to qualify for an enhanced sentence under the
ACCA based on four predicate offenses: (1) a 1973 conviction
purportedly for assault by means of a dangerous weapon

(ADW);[1] (2) a 1977 conviction for assault and battery by means of a dangerous weapon (ABDW) and armed robbery; (3) a 1977 conviction for armed robbery, kidnapping, and ABDW; and (4) a 1982 conviction for possession of a sawed-off shotgun.

Defendant contends, based on the Johnson cases, that none of these convictions any longer qualifies as a predicate offense for purposes of the enhanced sentencing provisions of the ACCA and that he is therefore entitled to re-sentencing. He argues that at re-sentencing his likely maximum sentence will be substantially lower than the term he has already served.

### III. DISCUSSION

In opposition to this petition, the government offers essentially two arguments.[2] First, it contends that Defendant is barred from bringing this petition because he

---

[1] As will be seen below, the documents before the court are insufficient to establish that this conviction was for assault with a dangerous weapon, rather than assault and battery with a dangerous weapon.

[2] Counsel disagree as to whether Beckles v. United States, 616 F. App'x 415 (11th Cir. 2015), cert. granted, 136 S. Ct. 2510 (2016)(No. 15-8544) (argued Nov. 28, 2016), has the potential to resolve any of the issues here. The government did not seek a stay, however, and the uncertainty of the timing and substance of the ultimate Supreme Court decision makes prompt resolution of this petition the proper course.

has procedurally defaulted and cannot demonstrate the required "cause and prejudice" to seek relief now. Second, it argues that at least three of the four convictions relied upon by Judge Freedman at the 1995 sentencing remain valid predicates under the ACCA.

A.  Procedural Default

This argument may be quickly disposed of. The undersigned has recently rejected the identical contention, finding that a Johnson-based claim under 28 U.S.C. § 2255 satisfies the novelty requirement for cause set forth in Reed v. Ross, 468 U.S. 1, 15 (1984). United States v. Aponte, No. 11-CR-30018-MAP, -- F. Supp. 3d --, 2016 WL 5338505, at *1 (D. Mass. Sept. 22, 2016). This case is even stronger than Aponte. In 1995, when Defendant here was sentenced, any argument based on the rationales approved twenty years later in the Johnson cases would have been not only novel, but practically unimaginable. The likelihood that the successful outcome of this proceeding will result in a lower sentence is sufficient to demonstrate prejudice. Judges from this district have unanimously rejected this "cause and prejudice" argument. Virden v. United States,

No. 09-10325-LTS (D. Mass. February 3, 2017), slip op. at 6

(collecting cases); <u>Cruz v. United States</u>, No. 09-CR-10104-

RWZ (D. Mass. Jan. 26, 2017); <u>United States v. Webb</u>, Nos.

01-CR10267-WGY & 06-CR-10251-WGY, -- F. Supp. 3d --, 2016 WL

6647929 (D. Mass. Nov. 9, 2016).

B.  <u>Predicate Convictions</u>

Defendant, as noted, challenges all four convictions as

proper ACCA predicate offenses.  The government does not

contest Defendant's position that possession of a sawed-off

shotgun is no longer a crime of violence under the ACCA.  It

argues, however, that all three remaining convictions

constitute legitimate predicate offenses.  The government's

argument is unpersuasive, as the discussion of each of these

convictions below will demonstrate.

1.  <u>The Ambiguous 1973 Conviction for ADW</u>

Pointing to the Pre-Sentence Report, the government

contends that Defendant was convicted in 1973 of assault

with a dangerous weapon ("ADW").  (Dkt. No. 368, Attach. 6.)

If Defendant was convicted of this crime, it would

constitute a predicate ACCA offense, under controlling First

Circuit law.  <u>United States v. Whindleton</u>, 797 F.3d 105, 116

-6-

(1st Cir. 2015).

It is by no means clear, however, that the 1973 conviction was for ADW, rather than ABDW. The evidence on this point is decidedly mixed, with the balance tipping somewhat in favor of Defendant.

The government offers a photocopy of a complaint and disposition document from the district court of Newton, Massachusetts, dated August 14, 1973, which appears to charge Defendant with ADW and includes a handwritten note on the reverse side indicating a conviction and one-year suspended sentence, imposed on October 9, 1973. (Dkt. No. 368, Attach. 7.) This document apparently provided the basis for the reference to the ADW conviction in the Pre-Sentence Report, dated March 1, 1995, which Defendant did not object to at sentencing.[3] The document in its current

---

[3] The failure of Defendant or his counsel to raise the possible inaccuracy in the Pre-Sentence Report at the time of sentencing in 1995 proves nothing. For most purposes, an ADW conviction suggests a lower degree of criminality than an ABDW conviction. Even if Defendant noticed the error in the ADW reference in the Pre-Sentence Report, he would have had no incentive to tell the court that he was actually convicted for the more serious crime of ABDW, especially when at that time both crimes could serve as predicate offenses under the residual clause of the ACCA.

form is unauthenticated, and Defendant has moved to strike it. (Dkt. No. 371.) The government has offered to present a witness to attempt to authenticate the document.

On the other hand, Defendant offers an authenticated copy of a page from the criminal docket book of the Newton District Court, clearly indicating a charge of ABDW, not ADW, on August 14, 1973, and a conviction for this offense on October 9, 1973. This record contains no reference to any ADW. (Counsel's Aff., Dkt. No. 355, Attachs. 1 & 2.) Defendant's counsel offers, in addition, Defendant's current Court Activity Record Information report, which lists the same charge and conviction as ABDW, not ADW. (Id., Attach. 3.) Finally, Defendant points to the sentencing transcript in which Judge Freedman, reviewing Defendant's criminal record, mentioned ABDW, but not ADW. (Sent. Hr'g Tr. 8:22-23 - 9:1-2, id., Attach. 4.)

The government, as noted, has indicated a willingness to bring in a witness currently employed by the Newton District Court to attempt to authenticate the photocopy of the 43-year-old complaint and disposition record (it concedes the original is no longer available) and to offer

testimony that these documents "would have been the source of the information on the docket entry." (Gov't Opp'n 1, Dkt. No. 375.)

Even assuming the witness testified as the government predicts, this evidence would not enlighten the court. The complaint and disposition record, in this case, clearly did not provide the basis for the authenticated, original docket entry, because the former says Defendant was charged with ADW, and the latter says ABDW. In a congested state district court, charges may frequently be altered on a busy court day as a result of plea discussions or for other reasons. A record-keeping mistake was made in memorializing Defendant's conviction, obviously, but by whom and regarding what now lies in impenetrable shadow.

As will be seen below, the resolution of this issue will have substantial bearing on Defendant's continued loss of liberty. The interests of justice here are simply too grave to rely, to Defendant's detriment, on such an intractably doubtful documentary record. The court will therefore, for purposes of this petition, assume that the 1973 conviction was for the ordinarily more serious crime of

ABDW and not ADW.

This makes a difference.  <u>Whindleton</u>, as noted, made clear that an ADW conviction was a valid ACCA predicate.  On the other hand, the First Circuit's recent decision in <u>United States v. Tavares</u>, 843 F.3d 1, 18-20 (1st Cir. 2016), suggested, with regard to ABDW, maybe yes, maybe no.

2.  <u>The Ambiguous 1973 Conviction for ABDW</u>.

<u>Tavares</u> noted that under Massachusetts law, two independent versions of the crime of ABDW existed: first, the intentional and unjustified use of force however slight ("ABDW-1"); second, the intentional commission of a wanton or reckless act that causes physical injury to another ("ABDW-2").  <u>Id.</u> at 12.  In <u>Tavares</u>, the First Circuit held that ABDW-1 constituted a crime of violence for Sentencing Guidelines and ACCA purposes, but it declined to decide whether the second "wanton or reckless" version, ABDW-2, did.  <u>Id.</u> at 13.

In some instances, this problem might be resolved by an examination of certain cognizable documents (<u>e.g.</u>, a plea agreement, plea colloquy, or the like) that would throw light on the exact nature of the conviction.  <u>See</u> <u>Shepard v.</u>

United States, 544 U.S. 13 (2005).  In Tavares, the First
Circuit remanded the case to the district court to permit
that very inquiry.  Tavares, 843 F.3d at 20.

    This approach will not work here.  The conviction at
issue occurred over forty years ago, and the government has
not suggested that any Shepard-approved documents are
available to identify what version of ABDW Defendant was
convicted of.  On this point, Tavares made clear that it is
the government's burden, not Defendant's, to locate and
supply these documents.  Id. (allowing "the government the
opportunity to put forth Shepard documents")(emphasis
added).

    Where a court has no ability to distinguish between a
version of a crime of conviction that constitutes a proper
predicate and a version that does not, the court is obliged
to disregard the conviction entirely as a possible
predicate.  See Shepard, 544 U.S. at 24.  So, this court
must face the question that Tavares declined to resolve:
does ABDW-2, the "wanton or reckless" version, constitute a
predicate offense for purposes of the ACCA?

    The question is bedeviling judges in this district.

Four (soon to be five, including the undersigned) have held that, unless Shepard-approved documents demonstrate that a defendant was clearly convicted of the ABDW-1 version of the offense, a common law ABDW conviction cannot be relied upon as a "violent offense" ACCA predicate. The latest decision, by Judge Sorokin, has ruled that "[r]eckless ABDW is not a violent felony" for purposes of the ACCA. Virden v. United States, No. 09-CR-10325-LTS, slip op. at 9 (D. Mass. Feb. 3, 2017) (citing United States v. Cruz, 09-CR-10104-RWZ (D. Mass. Jan. 26, 2017)). Two judges of this district have so far gone the other way. See Cruz, slip op. at 11 (citing the various decisions).

The issue seemed to have been resolved in United States v. Fish, 758 F.3d 1 (1st Cir. 2014), which examined the Massachusetts ABDW statute in light of Johnson I, 559 U.S. 133 (2010), and explicitly held that because "ABDW may be accomplished by a mere 'touching, however slight,'" it did not involve the use of sufficient physical force to constitute an ACCA predicate. Fish, 758 F.3d at 9 (quoting United States v. Hart, 674 F.3d 33, 42 (1st Cir. 2012)).

Whindleton, however -- in holding that ADW was a proper

-12-

predicate -- seemed to cast doubt on <u>Fish</u>.  The decision

noted that any argument regarding <u>Fish</u>'s impact on the

<u>Whindleton</u> analysis was undeveloped and not expressly

asserted by the defendant in that case.  <u>Whindleton</u>, 797

F.3d at 116 n.12.

The more recent <u>Tavares</u> decision held, despite <u>Fish</u>,

that ABDW-1 does constitute a crime of violence for purposes

of both the ACCA and the career offender provisions of the

Sentencing Guidelines.  843 F.3d at 13.  <u>Tavares</u> also held

that ABDW in Massachusetts was divisible, but left open the

question whether ABDW-2 could be a predicate crime of

violence.  In making the decision to leave this issue

unresolved, Judge Kayatta noted that under <u>Fish</u>, "as well as

the similar and analogous holdings of at least ten other

circuits," a conviction "for the reckless version of ABDW"

had not been considered a crime of violence, qualifying as

predicate for ACCA or Sentencing Guidelines purposes.  <u>Id.</u>

at 18.

What might or might not have changed things, he

thought, was <u>Voisine v. United States</u>, 136 S. Ct. 2272

(2016).  In <u>Voisine</u>, the Supreme Court examined a statute

prohibiting any person convicted of a "misdemeanor crime of domestic violence" from possessing a firearm.  18 U.S.C. § 922(g)(9).  The statute defined that phrase to cover a misdemeanor, committed upon a victim with whom the perpetrator had a specified domestic relationship, that had "as an element, the use or attempted use of physical force." § 921(a)(33)(A)(ii).  The question before the court in Voisine was whether a person who committed a misdemeanor crime of domestic violence by merely reckless conduct had engaged in "the use or attempted use of physical force." Affirming the First Circuit, Justice Kagan's opinion on behalf of seven justices held that a domestic misdemeanor assault conviction even for reckless, as opposed to knowing or intentional, conduct was sufficient to trigger the firearm ban.  Voisine, 136 S. Ct. at 2276.

The majority opinion in Voisine nowhere discusses, mentions, or even cites either of the Johnson opinions.  Its analysis focuses solely on the meaning of the word "use" in the context of the definition of a domestic misdemeanor, which was, as Justice Kagan noted, "the only statutory language either party thinks is relevant."  Id. at 2278.

Justice Scalia's earlier opinion in <u>Johnson I</u>, by contrast, concentrated solely on the meaning of the phrase "physical force" in the context of the definition of a "<u>violent</u> felony" set forth in § 924(e)(2)(B).  <u>Johnson I</u>, 559 U.S. at 140 (emphasis in original).

Despite these differences, primarily out of concern regarding the reach of <u>Voisine</u>, <u>Tavares</u> -- without explicitly overruling <u>Fish</u> -- declined to resolve the question whether a conviction for ABDW involving merely reckless conduct (ABDW-2) constituted a crime of violence for purposes of the Sentencing Guidelines and the ACCA. <u>Tavares</u>, 843 F.3d at 19.  The case was remanded in light of the possibility that the production of <u>Shepard</u>-approved documents would make the issue moot.

With only general guidance from the Court of Appeals, the responsibility to weigh the nature of an ABDW conviction in the context of the ACCA -- where, as here, no <u>Shepard</u>-approved documents exist -- now lies with us trial judges. As noted, we have gone different ways.

For at least three reasons, the stronger argument, by far, is that <u>Voisine</u> was never intended to, and does not,

alter <u>Johnson I</u>'s holding that for purposes of the ACCA "the phrase 'physical force' means <u>violent</u> force –- that is, force capable of causing physical pain or injury to another person." <u>Johnson I</u>, 559 U.S. at 140. This definition cannot, as <u>Fish</u> and numerous courts have held, encompass merely reckless conduct. Where a statute criminalizes conduct that does not fall under <u>Johnson I</u>'s definitional umbrella, and where there are no <u>Shepard</u>-approved documents to confirm that a conviction was for a more serious, qualifying version of the crime, then that conviction may not be considered as a predicate for an enhanced sentence under the ACCA. Since in Massachusetts the common law crime of assault and battery with a dangerous weapon may be committed without the degree of <u>violent</u> force demanded by <u>Johnson I</u>, it simply cannot be used (absent, as noted, <u>Shepard</u>-approved documents confirming a conviction based on ABDW-1) to support a sentencing enhancement under the ACCA.

The first, and perhaps strongest, consideration supporting this conclusion is the context of the <u>Voisine</u> opinion itself. The Court's analysis made clear that it was construing a specific statute directed at the "deadly

combination" of firearms and domestic strife.  <u>Voisine</u>, 136

S. Ct. at 2276.  The decision did not address a sentencing

enhancement, but a prohibition against possession of a

firearm.  The goal of 18 U.S.C. § 922(g)(9) was to bar

"domestic abusers convicted of garden-variety assault or

battery misdemeanors -- just like those convicted of

felonies -- from owning guns."  <u>Id.</u> at 2280.  It is more

than a stretch to apply a statutory definition so narrowly

targeted at the problem of guns and domestic violence to the

broader statutory sentencing environment encompassed by the

ACCA.

Second, Justice Kagan emphasized in <u>Voisine</u> that

accepting the government's argument would have essentially

disemboweled § 922(g)(9) and thwarted Congress's intent to

"close [a] dangerous loophole" in the gun control laws.  <u>Id.</u>

at 2276.  Barring convictions based on recklessness, she

noted, would render the statute "broadly inoperative" in at

least thirty-five states whose statutes defined a single

crime listing alternative mental states.  <u>Id.</u> at 2280.  The

result would be that the statute, designed to protect

victims of domestic abuse in highly dangerous situations,

would become a dead letter -- ineffective to bar firearm possession even for persons who had committed domestic misdemeanors knowingly and intentionally. It is hardly surprising that <u>Voisine</u> declined to gut a statute whose important goal was so clear.

Third, we have unusual assistance in resolving this dispute over the interaction between <u>Johnson I</u> (construing the ACCA) and <u>Voisine</u> (construing 18 U.S.S. § 922(g)(9)). The author of the majority opinion in <u>Johnson I</u>, Justice Scalia, presciently foresaw and explicitly rejected precisely the argument being offered by the government now. In 2010, he noted the government's contention that his construction of § 924(e)(2)(B)(i) "to require violent force will undermine its ability to enforce the firearm disability in § 922(g)(9)." <u>Johnson I</u>, 559 U.S. at 143. He called this prediction "unfounded," observing that the statutory definition of "violent felony" for purposes of the ACCA statute did not imply a decision that "the phrase has the same meaning in the context of defining a <u>misdemeanor</u> crime of domestic violence." <u>Id.</u> at 143-144 (emphasis in original). Indeed, early in <u>Johnson I</u>, Justice Scalia

underlined this very point, saying, "[W]e do not assume that a statutory word is used as a term of art where that meaning does not fit.  Ultimately, context determines meaning, and we 'do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense.'"  Id. at 139-140 (quoting Gonzales v. Oregon, 546 U.S. 243, 282 (2006)) (internal citations omitted).

Nothing in Voisine suggested any disagreement with Justice Scalia's dismissive language in Johnson I.  As noted, Johnson I was not mentioned or cited in Justice Kagan's majority opinion.  Although the case comes up, in passing, in a footnote in Justice Thomas's dissent, Voisine, 136 S. Ct. 2283 n.1, the possible conflict with Johnson I was not offered as an argument against Voisine's holding.  Not a single one of the justices in Voisine perceived such a conflict.  Thus, Voisine made clear, at least by inference, that the importation of Voisine's definitional analysis into the construction of the ACCA's sentencing enhancement provisions would produce exactly the "nonsense" Justice Scalia decried.

In sum, Voisine did not offer any convincing rationale

for disregarding Fish and the other circuit decisions

holding that a crime like the Massachusetts common law

offense of ABDW cannot, without Shepard-approved documents,

constitute a predicate for an ACCA sentencing enhancement.

The test, under Johnson I is straightforward: does

commission of the crime require "violent force – that is,

force capable of causing physical pain or injury to another

person." 559 U.S. 140 (emphasis in original). While some,

perhaps most, versions of ABDW contemplate conduct at this

extreme, not all versions do. Where the record lacks

cognizable evidence -- that is, Shepard-approved documents -

- supporting a conclusion that Defendant's conviction was

based in the more severe and violent version of the crime,

the conviction may not be considered for purposes of a

possible ACCA enhancement.[4]

_____

[4] It may seem counter-intuitive, at first blush, that ADW
qualifies categorically as a "violent felony" ACCA predicate,
where the more serious crime of ABDW does not. But, as
frequently happens, the intuitive response may be driven more
by labels than substance. Put crudely, the essence of an
assault is a threat of harm. This sort of threat falls fairly
neatly into the ACCA definitional pigeonhole. 18 U.S.C. §
924(e)(2)(B)(i) (defining "violent felony" as including any
crime that "has as an element the use, attempted use, or
threatened use of physical force against the person of
another") (emphasis added). The essence of a battery, on the

-20-

The court's conclusion here about ABDW would, alone, be sufficient to entitle Defendant to re-sentencing, since the ACCA enhancement requires three predicates, and the record now contains only two.  However, an examination of the remaining two purported predicates undermines them as well.

### 3.  The 1977 Conviction for Armed Robbery

Moving on to Defendant's conviction for armed robbery, the court will follow Judge Stearns' well-reasoned decision in <u>U.S. v. Dubose</u>, 04-cr-10291-RGS, -- F. Supp. 3d --, 2016 WL 7365166, at *1 (D. Mass. Dec. 19, 2016), holding that armed robbery in Massachusetts does not necessarily qualify as a crime of violence.  His ruling is consistent with the decisions of two circuit courts of appeal that have so far examined the Massachusetts armed robbery statute.  <u>United States v. Parnell</u>, 818 F.3d 974, 979 (9th Cir. 2016); <u>United</u>

---

other hand, is an unconsented physical touching.  This touching can occur without a threat or without even being foreseen (such as a tap from behind); it need not be injurious at all (the slightest touch may suffice); and it need not be specifically intended (it may simply be reckless).  In this light, it is not, in fact, terribly odd that ADW may satisfy <u>Johnson I</u>'s definition of a violent felony where ABDW does not.  The two offenses teeter on the pivot point of the necessarily hypothetical analysis of what qualifies and what does not.

States v. Redrick, 841 F.3d 478, 484 (D.C. Cir. 2016).

Like ABDW, armed robbery can be accomplished two
distinct ways: one by "force and violence" and one "by
assault and putting in fear."  Judge Stearns recognized that
the First Circuit, in U.S. v. Luna, 649 F.3d 91 (1st Cir.
2011), found that in Massachusetts the threat involved in
the commission of armed robbery was a threat of force.
He noted, however, that Luna only addressed the second type
of armed robbery, "by assault and putting in fear."  Because
the first version of armed robbery, the type committed "by
force and violence," can be accomplished by only minimal
contact, it cannot meet the "violent force" requisite of the
ACCA, as required by Johnson I.  Dubose, 2016 WL 7365166, at
*3.  Since this issue was neither briefed nor addressed in
any detail in Luna, that decision's broader dicta about the
armed robbery statute did not, in Judge Stearns's view, bar
a more probing analysis.  This court agrees.

Judge Stearns's careful review of Massachusetts
authority made clear that armed robbery under state law may
be accomplished by an act of de minimis force, without
putting the victim in fear, without the use of any dangerous

weapon, and without even the victim's knowledge of the perpetrator's possession of a weapon. A man with a knife in his pocket who snatched a purse out of a victim's hand using only minimal force has committed an armed robbery under Massachusetts law. See id. This is obviously insufficient under the Johnson I test (requiring violent force capable of causing physical pain or injury), and so, in the absence of Shepard-approved documents, an armed robbery conviction may not be used as a predicate for purposes of the ACCA.

## 4. The 1982 Conviction for Kidnapping

The discussion above leaves only one possible predicate supporting Defendant's ACCA sentencing enhancement, kidnapping. As to this offense, again, it seems hard to square its least forceful version with the "violent force" requirement of Johnson I. It would appear, for example, that under Massachusetts law, a grandparent may kidnap a child by abducting him or her with a promise of ice cream. See Commonwealth v. Nickerson, 5 Allen 518 (1862) (upholding an indictment for kidnapping where the 9-year-old child went willingly with the defendants when promised he would see his mother); see Mass. Gen. Laws ch. 265, § 26. Since it is not

-23-

necessary, however, to examine this statute in detail to render a decision here, the court will pass over it.

### IV.   CONCLUSION

The analysis set forth above may seem strangely contorted to a lay person, and even to a judge.  An assault and battery with a dangerous weapon not violent?  Even more strangely, an armed robbery with force and violence not violent?

But labels do not matter; substance matters.  The test itself is not hard to articulate: if a crime does not require, in all its versions, <u>violent</u> force capable of causing physical pain or injury, and if no cognizable documents are available to make the actual substance of the criminal conduct clear, then that conviction simply may not be cited to support a sentencing enhancement under the "force" clause of the ACCA.  The analysis can get involved, but the outcome may literally be the difference between eventual freedom and death in prison for a defendant.

Some consolation exists.  Many serious crimes -- murder, for example, and serious drug trafficking offenses -- require no extended analysis to conclude they are

predicates.  Moreover, in most instances, Shepard-approved documents will be available to clarify the exact nature of the crime and confirm its proper role as a sentencing enhancement.

In addition, it must be remembered that this discussion focuses on sentencing enhancements, not the elimination of punishment entirely.  Defendant's potential sentence in this case exceeded twenty years even without the enhancement, and he has already served more than that.

In Tavares, Judge Kayatta understandably called this area of the law "a Rube Goldberg jurisprudence of abstractions piled on one another."  843 F.3d at 19.  Yet, such as it is, the law is the law.  And this very old case presents a clear instance where, under that law, the prior convictions are flatly inadequate to support a sentencing enhancement.

For the foregoing reasons, Defendant's Motion to Correct Sentence (Dkt. No. 355) is hereby ALLOWED.  The clerk will set the case for a re-sentencing at the earliest possible date.

It is So Ordered.

                                    /s/ Michael A. Ponsor
                                   MICHAEL A. PONSOR
                                   U. S. District Judge